**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

101 EL PASO STREET, L.P.,

    Plaintiff,

v.                              No. 3:18-CV-00296

INTERSERV LP and HARTFORD
FIRE INSURANCE COMPANY,

    Defendants.
_____/

**PLAINTIFF 101 EL PASO STREET, L.P.'S ORIGINAL COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff, 101 El Paso Street, L.P., files this Original Complaint complaining of Defendants, InterServ LP and Hartford Fire Insurance Company, as follows:

**I. PARTIES**

1.    Plaintiff 101 El Paso Street, L.P. (hereinafter referred to as the "Owner") is a Delaware limited partnership with its principal place of business in El Paso, Texas. The partners in the Owner are citizens of Delaware and Texas.

2.    InterServ LP (hereinafter referred to as the "Contractor") is a California limited partnership; upon information and belief, its principal place of business is Los Angeles, California; and it may be served with process by serving its registered agent for service of process, Hubco Registered Agent Services, 815 Brazos Street, Austin, TX 78701 USA, or wherever it may be found. None of the partners in the Contractor are citizens of the states in which the Owner's partners are citizens.

1

3. Hartford Fire Insurance Company (hereinafter referred to as the "Surety") is a Connecticut corporation; upon information and belief, its principal place of business is Hartford, Connecticut; and it may be served with process by serving its registered agent for service of process, C T Corporation System, 67 Burnside Ave., East Hartford, CT 06108-3408, or wherever it may be found.

## II.  JURISDICTION

4. This Court has jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1332 in that this is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest, attorney's fees, and costs.

## III.  VENUE

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claims occurred in this judicial district.

## IV.  FACTS

6. On or about July 31, 2017, the Owner and the Contractor entered into a written contract (hereinafter referred to as the "Contract") for the Contractor to construct improvements on real property owned by the Owner and identified as Camino Real Renovation (hereinafter referred to as the "Project"), located in El Paso, Texas.

7. A true and correct copy of the transmittal of the signed Contract from the Owner to the Contractor is attached hereto and incorporated herein as Composite Exhibit "A".

8. A true and correct copy of the Contract is attached hereto and incorporated herein as Composite Exhibit "A".

9. The Surety issued Performance Bond No. 08BCSHS1528 guaranteeing to the Owner, the Bond's Obligee, the Contractor's performance of the Contract.  A true and correct

copy of the Surety's Performance Bond for the Project is attached hereto and incorporated herein as Exhibit "B".

10. Pursuant to the terms of the Performance Bond, Surety is liable to Obligee for "any and all losses, damages, expenses, costs and attorney's fees, including appellate proceedings, that Obligee sustains because of any default by Principal under the Contract."

11. Although the Contract references Exhibits in A101 § 9.1.7, no documents were ever agreed upon by the Owner and Contractor to represent those exhibits.

12. The date of commencement of the Contract Time was August 11, 2017.

13. The Contract requires Substantial Completion within 310 days from the date of commencement.

14. As of the date of this filing, the Project is not Substantially Complete.

15. The Contractor did not Substantially Complete the Project.

16. The only schedules for the completion of the Project submitted by the Contractor to the Owner in 2018 were on January 29, June 14, July 11, and July 27.

17. Initially the Contractor represented to the Owner that it was going to construct the hotel in three (3) phases and that the hotel could remain open during the construction, and that the Contractor's workers would stay in vacant rooms at the hotel during the construction as a savings to the Owner.

18. After the Contract was signed, the Contractor recommended to the Owner that the Project be closed during the renovation.

19. Later, when asked by the Owner how much time the hotel being closed would save the Contractor, the Contractor stated that it didn't know.

20. The closing of the hotel during the construction has caused the Owner to lose revenue that it had been generating from the hotel's operation.

21. The Contractor has submitted at least four (4) Prime Contract Change Order (hereinafter referred to as "PCCO") requests to date to the Owner for the costs of housing its workers, who were supposed to be housed in the hotel but could not be because the hotel was closed.

22. During the construction, the Contractor submitted PCCO requests for costs it knew that the Owner was not liable for under the Contract Documents.

23. For example, the Contractor has submitted at least seven (7) PCCO requests to date for sales tax on its pay applications, when the Contract Documents clearly require the Contractor to pay the sales tax.

24. On or about July 5, 2018, the Contractor stopped performing Work that it characterized as additional scope for which it had requested additional compensation in PCCO numbers 25-29 to perform.

25. The Owner issued a written Declaration of Default consistent with the requirements of the Contract Documents on July 30, 2018, to the Contractor and Surety. A true and correct copy of the Declaration of Default is attached hereto and incorporated herein as Exhibit "C".

26. The Contractor is in Default for reasons including, without limitation, failing to prosecute the Work in a timely manner, failing to provide updated schedules, acknowledging that the Work will not be completed in the Contract Time, and failing to supply enough properly skilled workers or proper materials.

27. The Contractor failed to prosecute the Work in a timely manner.

28. The Contractor failed to provide updated schedules to the Owner as required by the Contract Documents.

29. The Contractor acknowledged that the Work will not be completed in the Contract Time.

30. The Contractor failed to supply enough properly skilled workers or proper materials.

31. The Contractor failed to take any steps to remedy the Defaults.

32. The Surety failed to take any steps to remedy the Defaults.

33. The Owner issued a written Termination for Cause consistent with the requirements of the Contract Documents on October 4, 2018, to the Contractor and Surety. A true and correct copy of the Notice of Termination for Cause is attached hereto and incorporated herein as Exhibit "D".

34. The Contractor is guilty of substantial breaches of material provisions of the Contract Documents.

35. The Contractor failed to perform work shown on the Contract Drawings without additional compensation.

36. For example, the Contractor gave the Owner a $1.2 million bid to construct a spa shown on the Contract Drawings.

37. The Contractor misrepresented material facts to the Owner to induce the Owner's execution of PCCO requests.

38. The Owner revoked all PCCO requests executed by the Owner that were not fully executed by all parties.

39. The Contractor refused to give the Owner credits to which the Owner claims entitlement based on reductions in the Contractor's scope agreed upon after the Contract was executed. A true and correct copy of the Owner's Notice of Claim is attached hereto and incorporated herein as Exhibit "E".

40. The Owner full performed its obligations under the Contract.

41. The Owner has retained the undersigned attorneys, and has obligated itself for their fee, for which the Surety is liable under the Bond, and the Contractor may be liable under applicable law.

42. In addition to its direct damages flowing from the breach of the Contractor and Surety, the Owner has incurred special damages, including, without limitation, loss of use of the hotel for the period from when it was required to be Substantially Complete until it achieves Substantial Completion; loss of revenue from losing convention and other business during the same time period; loss of the use of tax credits that would have been refunded and used to reduce the Owner's liability to the Lender had the Project been completed in 2018; damages resulting from the Contractor's misrepresentations about the cost of the Project in the form of lost incentives that would have been available from the City had the Contractor advised the Owner appropriately at the outset about the expected costs of the Project; additional interest carried by the Owner; additional overhead carried by the Owner for key hotel personnel that were hired in anticipation of the originally scheduled completion; costs of warehousing furniture, fixtures, and kitchen and other equipment that is now in storage; and additional costs of administration work and housing of hotel employees.

### V.  CAUSE OF ACTION AGAINST THE CONTRACTOR

43. The Owner incorporates and re-alleges the factual allegations in Paragraphs 1 - 42 as if fully set forth herein.

44. The Contractor has materially breached the Contract by, without limitation, failing to prosecute the Work in a timely manner, failing to provide updated schedules, acknowledging that the Work will not be completed in the Contract Time, failing to supply enough properly skilled workers or proper materials, failing to perform the construction of the Project within the Contract Time, failing to provide updated schedules, failing to provide requested schedules, failing and refusing to perform work shown on the Contract Drawings without additional compensation, and misrepresenting material facts to the Owner to induce the Owner's execution of PCCO requests.

45. As a result of the Contractor's material breaches, the Owner has sustained damages, losses, and expenses, including, without limitation, the costs to complete the Project, liquidated damages, special damages identified in Paragraph 42, expert witness fees and costs, and attorney's fees and costs, and will continue to sustain damages, losses, and expenses through the time of trial.

### VI.  CAUSE OF ACTION AGAINST THE SURETY

46. The Owner incorporates and re-alleges the factual allegations in Paragraphs 1 - 42 as if fully set forth herein.

47. The Performance Bond issued by the Surety required, *inter alia*, Surety to pay Owner all losses, damages, expenses, costs and attorney's fees, including appellate proceedings, that Owner sustains because of any default by the Contractor under the Contract.

48. Pursuant to the terms of the Performance Bond, the Surety is liable for providing a replacement contractor to complete the Contract.

49. Pursuant to the terms of the Performance Bond, the Surety is liable for all the costs to complete the Project, and all damages resulting to the Owner from the Contract's Default, including, without limitation, liquidated damages, special damages identified in Paragraph 42, expert witness fees and costs, and attorney's fees and costs.

50. The Surety materially breached its obligations under the Performance Bond by failing to cure the Contractor's Defaults.

51. As a result of the Surety's material breach, the Owner has sustained damages, losses, and expenses, including, without limitation, the costs to complete the Project, liquidated damages, special damages identified in Paragraph 42, expert witness fees and costs, and attorney's fees and costs.

## VII.  ATTORNEY'S FEES

52. The Owner incorporates and re-alleges the factual allegations in Paragraphs 1 - 42 as if fully set forth herein.

53. The Owner has made demand upon the Surety to comply with its obligations under the Performance Bond, but the Surety has failed and refused to do so.  As a result of the Surety's failure to honor its obligations pursuant to the Performance Bond, the Owner has been compelled to engage the law firm of Windle, Hood, Norton, Brittain & Jay LLP, to bring this action against the Surety for enforcement of the Performance Bond.  Pursuant to the terms of the Performance Bond, the Owner is entitled to recover from the Surety its attorneys' fees, not only in the prosecution of this lawsuit, but any sustained by Owner because of any Default by Principal, expressly including appellate proceedings.

## VII.  CONDITIONS PRECEDENT

54. All conditions precedent to the Owner's entitlement to assert the above claims and causes of action have occurred or have been satisfied, waived, or excused.

WHEREFORE, Plaintiff 101 El Paso Street, L.P. respectfully requests that the Defendants be cited to appear and answer and that upon final hearing or trial, that the Court enter judgment against Defendant InterServ LP and Defendant Hartford Fire Insurance Company in favor of 101 El Paso Street, L.P. for all losses, costs, damages, and expenses, including, but not limited to, liquidated damages, special damages identified in Paragraph 42, expert witness fees and costs, and attorney's fees and costs, and expenses incurred to enforce the Contract and Bond, incurred by 101 El Paso Street, L.P. through the time of trial; enter judgment that 101 El Paso Street, L.P. recover its costs, pre- and post-judgment interest at the maximum amount allowed by law; and award 101 E Paso Street, L.P. such other and further relief at law or in equity to which 101 El Paso Street, L.P. is justly entitled.

Respectfully submitted,

**WINDLE HOOD NORTON
 BRITTAIN & JAY, LLP**
201 East Main, Suite 1350
El Paso, Texas 79901
(915) 545-4902 Telephone
(915) 545-4911 Fax

By: */s/ Joseph L. Hood, Jr.*
**JOSEPH L. HOOD, JR.**
hood@windlehood.com
State Bar No. 09943250
Attorneys for Plaintiff
101 El Paso Street , L.P.